# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

| | | |
|---|---|---|
| HAROLD SHURTLEFF, and CAMP CONSTITUTION, a public charitable trust, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF BOSTON, and GREGORY T. ROONEY, in his official capacity as Commissioner of the City of Boston Property Management Department, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## VERIFIED COMPLAINT
## FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF,
## <u>DECLARATORY RELIEF, AND DAMAGES</u>

Ryan P. McLane (Mass. 697464)
MCLANE & MCLANE
975A Springfield Street
PO Box 105
Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com

Mathew D. Staver (Fla. 701092)[†]
Horatio G. Mihet (Fla. 26581)[†]
Roger K. Gannam (Fla. 240450)[†]
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
407-875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org

Attorneys for Plaintiffs
[†]Application to appear *pro hac vice* pending

Plaintiffs, HAROLD SHURTLEFF ("Shurtleff"), and CAMP CONSTITUTION, a public charitable trust, sue Defendants, CITY OF BOSTON ("Boston" or the "City"), and GREGORY T. ROONEY, in his official capacity as Commissioner of the City of Boston Property Management Department ("Rooney"), and allege:

<u>**INTRODUCTION**</u>

1.      This is a civil action whereby Plaintiffs seek preliminary and permanent injunctive relief enjoining Defendants: (a) from denying Plaintiffs permission to raise the Christian flag on a City Hall Flagpole designated for use by individuals and organizations for purposes of expression by displaying flags communicating messages chosen by the individuals or organizations; (b) from enforcing against Plaintiffs any discriminatory policy prohibiting them from using the designated public forum flagpoles created by Defendants; (c) from acting in such a manner as to violate Plaintiffs' rights to Freedom of Speech, Freedom of Assembly, and Equal Protection, guaranteed under the First and Fourteenth Amendments to the United States Constitution and Articles 1, 3, and 16 of the Massachusetts Declaration of Rights; and (d) from violating the Establishment Clause of the First Amendment to the United States Constitution and Articles 2 and 3 of the Massachusetts Declaration of Rights.

2.      Plaintiffs also pray for judgment declaring unconstitutional, both facially and as applied, Defendants' unwritten policy and practice prohibiting "non-secular" flags on the designated public forum Flagpoles, and Defendants' actions in denying Plaintiffs the opportunity to exercise their rights, as direct violations of Plaintiffs' rights and the freedoms protected by the First and Fourteenth Amendments to the United States Constitution and Articles 1, 2, 3, and 16 of the Massachusetts Declaration of Rights. Plaintiffs also seek an award of such damages as have been directly and proximately caused by Defendants' violations of Plaintiffs' rights.

3.      An actual controversy exists between the parties involving substantial constitutional issues, in that Defendants' unwritten policy and practice is unconstitutional on its face and as applied, violates Plaintiffs' rights to Freedom of Speech, Freedom of Assembly, and Equal Protection, guaranteed under the First and Fourteenth Amendments to the United States Constitution and Articles 1, 3, and 16 of the Massachusetts Declaration of Rights, and also violates the Establishment Clause of the First Amendment to the United States Constitution and Articles 2 and 3 of the Massachusetts Declaration of Rights.

## JURISDICTION AND VENUE

4.      This action arises under the First and Fourteenth Amendments to the United Constitution, Articles 1, 2, 3, and 16 of the Massachusetts Declaration of Rights, and 42 U.S.C. §1983.

5.      The Court has jurisdiction of this action under 28 U.S.C. §§1331, 2201–02.

6.      Venue is proper under 28 U.S.C. §1391(b). Each and all of the acts alleged herein were done by Defendants, and each of them, under the color and pretense of the statutes, ordinances, regulations, practices, customs, and uses of the City of Boston.

7.      The Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57, Fed. R. Civ. P., and to issue the preliminary and permanent injunctive relief requested by Plaintiffs under Rule 65, Fed. R. Civ. P.

8.      The Court is authorized to grant Plaintiffs' prayer for costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

9.      The Court has supplemental jurisdiction over any and all claims arising under state law under 28 U.S.C. §1367.

## PARTIES

10.     Plaintiff HAROLD SHURTLEFF is a resident of the Commonwealth of Massachusetts, and is the Director and co-founder of Plaintiff CAMP CONSTITUTION.

11.     Plaintiff CAMP CONSTITUTION is a public charitable trust, registered in the State of New Hampshire. It is an unincorporated association with the ability to sue and be sued under the laws of the State of New Hampshire, *see Brooks v. Trustees of Dartmouth Coll.*, 161 N.H. 685, 691 (2011), and the Commonwealth of Massachusetts, *see Northbrook Excess & Surplus Ins. Co. v. Med. Malpractice Joint Underwriting Ass'n of Massachusetts*, 900 F.2d 476, 480 (1st Cir. 1990).

12.     Defendant CITY OF BOSTON is a public body corporate and politic, established, organized, and authorized under and pursuant to the laws of Massachusetts, with the authority to sue and be sued, and was at all times relevant herein, operating within the course and scope of its authority and under color of state law.

13.     Defendant GREGORY T. ROONEY is, and was at all times relevant herein, Commissioner of the City of Boston Property Management Department, and acted within the course and scope of his authority as Commissioner.

## GENERAL ALLEGATIONS

### Plaintiffs' Applications for Permit

14.     Camp Constitution is an all-volunteer association first formed in 2009. It offers classes and workshops on a number of subjects including U.S. History, the U.S. Constitution, current events, and how to be a freedom activist.

15.     Camp Constitution's mission is to enhance understanding of the country's Judeo-Christian moral heritage, the American heritage of courage and ingenuity, the genius of the United States Constitution, and the application of free enterprise, which together have given the nation an

unprecedented history of growth and prosperity. Camp Constitution wants to motivate, inspire, and activate this generation of Patriots as well as the next generation of Patriots.

16.     In his role as Director and co-founder of Camp Constitution, Shurtleff operates the Camp Constitution Radio Show, delivers addresses to groups, publishes books and other material under the Camp Constitution publishing division, hosts the Camp Constitution blog, YouTube channel, Facebook page and other social media sites, raises money to fund the various efforts, and carries out various other duties related to the organization. Shurtleff also serves as Director of Camp Constitution's annual family camp.

17.     As part of its mission, Camp Constitution has engaged in free speech activities in Boston Common during which it has placed information tables and distributed free copies of the U.S. Constitution to all comers.

18.     Shurtleff has obtained permits from the City for Camp Constitution's free speech activities on numerous occasions.

19.     On at least one occasion, in approximately 2012, Shurtleff applied for and received permission to raise a flag on one of the City Hall Flag Poles which have been designated for use by private parties to fly flags as part of free speech activities commemorating historical events, cultural events, ethnic groups, countries, and causes.

20.     Over the course of several years, Shurtleff has requested various permits for free speech activities at City Hall Plaza by e-mail and/or telephone calls with City Hall staff members in charge of permits.

21.     Prior to September 2017, Shurtleff was successful in obtaining permits for Camp Constitution's free speech activities.

22.     September 17 of each year is officially designated by federal law as "Constitution Day and Citizenship Day." 36 U.S.C. § 106(a). The Constitution Day law further provides as follows:

> (b) Purpose.--Constitution Day and Citizenship Day commemorate the formation and signing on September 17, 1787, of the Constitution and recognize all who, by coming of age or by naturalization, have become citizens.
>
> (c) Proclamation.--The President may issue each year a proclamation calling on United States Government officials to display the flag of the United States on all Government buildings on Constitution Day and Citizenship Day and **inviting the people of the United States to observe Constitution Day and Citizenship Day, in schools and churches, or other suitable places, with appropriate ceremonies.**
>
> (d) State and local observances.--The civil and educational authorities of States, counties, cities, and towns are urged to make plans for the proper observance of Constitution Day and Citizenship Day and for the complete instruction of citizens in their responsibilities and opportunities as citizens of the United States and of the State and locality in which they reside.

36 U.S.C. § 106 (emphasis added).

23.     Over 100 years before the codification of Constitution Day and Citizenship Day in federal law, the Supreme Court observed,

> If we examine the constitutions of the various states, we find in them **a constant recognition of religious obligations**. Every constitution of every one of the 44 states contains language which, either directly or by clear implication, **recognizes a profound reverence for religion, and an assumption that its influence in all human affairs is essential to the well-being of the community**.

*Holy Trinity Church v. United States*, 143 U.S. 457, 468 (1892) (emphasis added). The Supreme Court specifically compared the constitutions of Massachusetts and other states to illustrate its point:

> This recognition may be in the preamble, such as is found in the constitution of Illinois . . . .

> . . . . It may be in clauses like that of the constitution of Indiana . . . . Or in provisions such as are found in . . . the declaration of rights of the constitution of Maryland . . . . Or like that in articles 2 and 3 of part 1 of **the constitution of Massachusetts**, (1780:) 'It is the right as well as the duty of all men in society publicly, and at stated seasons, to worship the Supreme Being, the great Creator and Preserver of the universe. * * * **As the happiness of a people and the good order and preservation of civil government essentially depend upon piety, religion, and morality**, and as these cannot be generally diffused through a community but by the institution of the public worship of God and of public instructions in piety, religion, and morality . . . .

*Id.* at 468–69 (penultimate alteration in original) (emphasis added).

24.     In connection with the 2017 observance of Constitution Day and Citizenship Day, Plaintiffs desired to conduct an event close in time to September 17, 2017, to commemorate the civic and social contributions of the Christian community to the City, the Commonwealth of Massachusetts, religious tolerance, the Rule of Law, and the U.S. Constitution, by raising a Christian flag on one of Boston's City Hall Flag Poles at City Hall Plaza. Accordingly, on July 28, 2017, Shurtleff followed his customary practice for obtaining permits from the City for free speech activities by contacting City official Lisa Lamberti by telephone, and then by e-mail at her request, and requested a permit:

> [T]o raise the Christian Flag on City Hall Plaza. Here are a few potential dates:
>
> Thursday the 7th of September 10:00.--11:00AM Thursday the 14th of September 10:00 AM-11:00 or Saturday September 23--10:00 AM-11:00 AM.
>
> It will be sponsored by Camp Constitution. We will have short speeches by some local clergy focusing on Boston's history.

Shurtleff included a picture of the Christian flag he proposed to raise on the City Hall Flag Poles. A true and correct copy of Shurtleff's e-mail request is attached hereto as <u>Exhibit A</u> and incorporated herein by this reference.

25.     On August 8, 2017, Shurtleff sent an e-mail to Lamberti to follow up on his permit request. Lamberti responded the same day, writing, "I am just waiting for the approval from my bosses I just sent them another e-mail." A true and correct copy of Shurtleff's follow up e-mail and Lamberti's response is attached hereto as <u>Exhibit B</u> and incorporated herein by this reference.

26.     On August 18, 2017, Shurtleff sent another e-mail inquiry to Lamberti, asking, "Any word?" A true and correct copy of Shurtleff's e-mail inquiry is attached hereto as <u>Exhibit B</u> and incorporated herein by this reference.

27.     Shurtleff called Lamberti to follow up his August 18, 2017 e-mail, and Lamberti instructed Shurtleff to call Lamberti's boss if Shurtleff did not hear back from Lamberti in one day. Shurtleff called the number provided by Lamberti, and then received a telephone message from an official in the City's property management department. Shurtleff called him back, and the official advised Shurtleff that he thought the permit was already issued, that the person responsible for issuing the permit is on vacation, and that the official would get back to Shurtleff following the Labor Day holiday.

28.     On September 5, 2017, Lamberti sent an e-mail to Shurtleff advising that the permit had been denied. On September 6, 2017, Shurtleff responded by e-mail, asking, "What was the official reason for denying us to raise the Christian flag?" A true and correct copy of Lamberti's e-mail and Shurtleff's response is attached hereto as <u>Exhibit C</u> and incorporated herein by this reference.

29.     On September 8, 2017, Shurtleff received the following e-mail from Defendant Rooney:

> I am writing to you in response to your inquiry as to the reason for denying your request to raise the "Christian Flag". The City of Boston maintains a policy and practice of respectfully refraining from flying non-secular flags on the City Hall flagpoles. This policy

and practice is consistent with well-established First Amendment jurisprudence prohibiting a local government from "respecting an establishment of religion." This policy and practice is also consistent with City's legal authority to choose how a limited government resource, like the City Hall flagpoles, is used.

According to the above policy and practice, the City of Boston has respectfully denied the request of Camp Constitution to fly on a City Hall flagpole the "Christian" flag, as it is identified in the request, which displays a red Latin cross against a blue square bordered on three sides by a white field.

The City would be willing to consider a request to fly a non-religious flag, should your organization elect to offer one.

Regards,

Gregory T. Rooney

A true and correct copy of the September 8, 2017 Rooney e-mail is attached hereto as <u>Exhibit D</u> and incorporated herein by this reference.

30.     On or about September 13, 2017, Shurtleff submitted to the City a written City Hall and Faneuil Hall Event Application, requesting use of City Hall Plaza and the City Hall Flag Poles for the event "Camp Constitution Christian Flag Raising," and proposing dates of October 19, 2017 or October 26, 2017. Shurtleff described the event as follows:

Celebrate and recognize the contributions Boston's Christian community has made to our city's cultural diversity, intellectual capital and economic growth. The Christian flag is an important symbol of our country's Judeo-Christian heritage. During the flag raising at the City Hall Plaza, Boston recognizes our Nation's heritage and the civic accomplishments and social contributions of the Christian community to the Commonwealth of Massachusetts, religious tolerance, the Rule of Law, and the U.S. Constitution, which together gave our Nation an unprecedented history of growth and prosperity. The event program includes a speech by Rev. Steve Craft, an instructor at Camp Constitution on the need for racial reconciliation, a speech by Pastor William Levi, formerly of the Sudan, on the blessings of religious freedom in the U.S. and an historical overview of Boston by Hal Shurtleff, director of Camp Constitution.

A true and correct copy of the completed application is attached hereto as <u>Exhibit E</u> and incorporated herein by this reference.

31.     On September 14, 2017, Plaintiffs' counsel sent a letter to Boston Mayor Martin J. Walsh, with copies to the members of the Boston City Council, the Boston City Counsel, and Defendant Rooney, enclosing the completed City Hall and Faneuil Hall Event Application and requesting that the city approve the application on or before September 27, 2017. The letter further explained the constitutional problems with the City's denial of Shurtleff's request. A true and correct copy of the letter is attached hereto as <u>Exhibit F</u> and incorporated herein by this reference.

32.     The City did not respond to either Shurtleff's second permit request or the letter from Plaintiffs' counsel.

### Defendants' Designated Public Fora and Permit Requirements

33.     The City has made available designated public spaces in the city where citizens can engage in First Amendment activities upon obtaining a permit, including Faneuil Hall, Samuel Adams Park, City Hall Plaza, City Hall Lobby, City Hall Flag Poles, and North Stage.

34.     The City has established written policies for use of these public spaces and has posted the policies on its website, City of Boston, *How to Hold an Event Near City Hall*, https://www.boston.gov/departments/property-management/how-hold-event-near-city-hall    (last visited July 5, 2018). The online policies provide, in pertinent part, as follows:

> You need our permission if you want to hold a public event at certain properties near City Hall. These locations include:
>
> • Faneuil Hall
> • Sam Adams Park
> • City Hall Plaza
> • The lobby of City Hall
> • The City Hall Flag Poles, and
> • The North Stage.

9

If someone else already applied for the space, we may recommend other places for you to use.

We may deny your application if:

- Your application is incomplete
- You didn't give us the required insurance certificate
- You're unable to hold a contract, or to sue and be sued
- You had an event in the past and caused public property damage
- You have unpaid debts with the City
- You plan to have any illegal activities
- Your event causes a danger to the health or safety in the area
- You have a history of disobeying City regulations or permits, or
- You lied about your information on your application.

. . . .

We'll get back to you in writing within 10 days. We might ask for more information or documents about your event.

You may have to apply for other permits and meet with the Special Events Committee. We'll tell you what other departments to contact. If you don't get the right permits and licenses before your event, we will revoke your application.

If we approve your application, you have to follow our event guidelines:

- You can't allow illegal activity to take place at your event.
- You must agree to pay for any damage to public property.
- You can't hold us responsible for any damage or violations that happen at your event.
- We have the right to make other rules for your event at any time.

A true and correct copy of the online policies are attached hereto as <u>Exhibit G</u> and incorporated herein by this reference.

35.    Additional rules regarding denial of permits are printed on the City's written application form. The rules printed on the form provide as follows:

What are the reasons a request could be denied?

Where possible, the Office of Property and Construction Management seeks to accommodate all applicants seeking to take advantage of the City of Boston's public forums. To maximize

efficient use of these forums and ensure the safety and convenience of the applicants and the general public, access to these forums must be regulated. To this end, the Office of Property and Construction Management may deny a request for the following reasons:

- The use or activity intended by the applicant is prohibited by law, ordinance, or by regulation.
- A fully executed prior application for a permit for the same time and place has been received and a permit has been or will be granted to a prior applicant authorizing uses or activities which do not reasonably permit multiple occupancy of the particular area. In such cases, the City will propose an alternative space, if available.
- The use or activity intended by the applicant would conflict with previously planned programs organized and conducted by the City and previously scheduled for the same time and place. In such cases, the City will propose an alternative space, if available.
- The use or activity intended by the applicant would present an unreasonable danger to the health or safety of the applicant or other users of the area, City employees, or the public.
- The applicant has not complied with applicable license or permit requirements, ordinances, or regulations of the City.
- The application contains a material falsehood or misrepresentation.
- The applicant has made on prior occasions material misrepresentations regarding the nature or scope of an event or activity previously permitted or has violated the terms of prior permits issued to or on behalf of any applicant.
- The application is not fully completed and executed.
- The applicant has failed to tender the required insurance certificate.
- The applicant is legally incompetent to contract, or to sue and be sued.
- The applicant or person or group on whose behalf the application for permit was made has on prior occasions damaged City property, and has not paid for such damage, or has other outstanding and unpaid debts to the City of Boston.

A true and correct copy of a blank event application form is attached hereto as Exhibit H and

incorporated by this reference.

36. When events are approved, the City adds them to the events calendar on its website

at http://cityhallplazaboston.com/events/. For example, for the Portuguese-American festival,

which included raising the Portuguese flag, the City posted:

> The representative symbol of all that constitutes a nation and its people is the Flag. The flag represents the entire history of a people, their beliefs, struggles and hopes. Used both in peacetime and in wartime, it is one of the most comprehensive universal symbols.
>
> The five blue shields of the Portuguese flag represents the five moor kings defeated by the first King of Portugal, D. Afonso Henriques, at the Battle of Ourique. **The dots inside the blue shields represent the five wounds of Christ when crucified.** Counting the dots and doubling those five in the center, there are thirty dots that represents **the coins Judas received for having betrayed Christ**. The seven castles represents the fortified cities D. Afonso Henriques conquered from the moors.
>
> The globe represents the world discovered by the Portuguese navigators in the fifteen and sixteenth centuries. Finally, the green strip is meant to symbolize the hope in the future and the red the blood of the nation's heroes.
>
> Come and join us in honoring the flag of Portugal in what represents the official recognition of the Portuguese community's presence and importance in the State of Massachusetts. Your presence is of key importance to pay this solemn homage to Portugal and the Portuguese emigrant community with grandeur.
>
> With the performances of the Rancho Folclórico Corações Lusiadas and the Filarmónica Santo António of Cambridge

(Emphasis added.) A true and correct copy of the City's Portuguese-American festival website announcement is attached hereto as <u>Exhibit I</u> and incorporated herein by this reference.

37.     Among the public fora the City makes available for events are the City Hall Flag Poles, which the City has made available to private organizations to raise flags related to ethnic and other cultural celebrations, the arrival of dignitaries from other countries, the commemoration of independence or other historic events in other countries, or the celebration of certain causes such as "gay pride." Permits have been issued for flag raisings for the countries of Albania, Brazil, Ethiopia, Italy, Panama, Peru, Portugal, Puerto Rico, Mexico, as well as the People's Republic of China and Cuba. Permits have been granted to raise the flag of the private Chinese Progressive

Association, National Juneteenth Observance Foundation, the Bunker Hill Association, and Boston Pride.

38.     The only written policies provided by the City to applicants for permits to use the City's designated public fora are the policies on its website (Exhibit G) and the additional rules printed on its permit application form (Exhibit H).

39.     The City has not published or established any written criteria for approval of flag raising events in addition to the policies applicable to other cultural and community events staged at the City's designated public fora. Specifically, there is no written policy supporting Defendant Rooney's statement that "the City of Boston maintains a policy and practice of respectfully refraining from flying non-secular flags on the City Hall flagpoles," nor any written policy authorizing or directing the city to offer applicants an alternative of flying a "non-religious" flag. (*See* Exhibit D.)

40.     There is also no written policy defining Defendants' term "non-secular," and therefore nothing to cabin administrative discretion in implementing Defendants' "policy and practice of respectfully refraining from flying non-secular flags on the City Hall flagpoles." (*See* Exhibit D.)

41.     In addition to the Portuguese Flag (*supra* ¶ 36) the City regularly flies or permits the raising of flags on the City Hall Flagpoles which contain explicit religious (and presumably, "non-secular") language and symbols:

     a.     The City flies the Boston City Flag on the City Hall Flagpoles, which flag depicts the City Seal, containing the inscription "SICUT PATRIBUS, SIT DEUS NOBIS" (which means, "God be with us as he was with our fathers"). A true and correct copy of the City's webpage guide to the City Flag and City Seal is attached hereto as Exhibit J and

incorporated herein by this reference, and is also available on the City's website at https://www.boston.gov/departments/tourism-sports-and-entertainment/symbols-city-boston (last visited July 5, 2018).

b.      The City flies or allows to be raised the Bunker Hill Flag on the City Hall Flagpoles to commemorate the Revolutionary War Battle of Bunker Hill and Bunker Hill Day, which occurs on June 17 each year. The Bunker Hill Flag contains a red St. George's Cross (and a smaller green pine tree) against a white square in the canton, bordered by a blue field. Attached hereto as Exhibit K and incorporated herein by this reference is a true and correct copy of a photograph of the Bunker Hill Flag flying on the City Hall Flagpoles, which photograph was posted on the Facebook account of Boston City Councilor At-Large and City Council President Michelle Wu on June 9, 2017.

42.     To the extent that there exists an unwritten policy and practice prohibiting "flying non-secular flags on the City Hall flagpoles," such unwritten policy and practice constitutes an unconstitutional prior restraint on speech.

43.     Defendants' unwritten policy that prohibits "non-secular" flags in the City's designated public forum of the City Hall Flagpoles is unconstitutional in that it grants unbridled discretion to government officials to determine what is "non-secular" and therefore to impermissibly ban expressive displays on the basis of content, viewpoint, or other unconstitutional grounds.

44.     Defendant Rooney exercised his authority as Commissioner of Property Management for the City of Boston capriciously and arbitrarily to label Plaintiffs' proposed display of the Christian flag "non-secular" and thereby deny access to Defendants' designated public forum unless Plaintiffs agreed to display a "non-religious" flag.

45.     In implementing their alleged practice and custom, Defendants have caused irreparable harm to Plaintiffs' cherished constitutional rights.

**Plaintiffs' Desire to Exercise Their Constitutional Rights in the Future**

46.     Plaintiffs desire to exercise their constitutional rights in the same manner and on equal terms as do other individuals and organizations, by displaying the Christian flag and providing information on the Christian community and America's Judeo-Christian heritage in Defendants' designated public fora. Specifically, Plaintiffs desire to conduct the Christian flag-raising event that Defendants denied in 2017, at City Hall Plaza and the City Hall Flagpoles, on Constitution Day and Citizenship Day, September 17, 2018, or on such alternative date as close as possible to September 17, 2018, which allows sufficient time for the Court to grant the preliminary injunctive relief requested herein, and on which the forum is available based on other applications properly approved by the City in the ordinary course.

47.     As a result of Defendants' denial of Plaintiffs proposed 2017 flag-raising event based on Defendants' alleged unwritten policy against "non-secular" flags, and Defendants' refusal to acknowledge Plaintiffs second application for permit and Plaintiffs' counsel's letter, Plaintiffs are left with no choice but to sue Defendants for the right to conduct their proposed flag-raising event on the same terms and conditions as other expressive events communicating content and viewpoints of which Defendants approve.

## COUNT I
### Violation of Freedom of Speech
### Under the First Amendment to the United States Constitution

48.     Plaintiffs hereby reallege and adopt by reference each and every allegation in the preceding paragraphs numbered 1 through 47.

49.     Defendants violated Plaintiff's First Amendment right to Freedom of Speech by preventing Plaintiffs from displaying the Christian flag as part of a celebration of the Christian

community and America's Judeo-Christian heritage to be held at Defendants' designated public

fora at City Hall Plaza and the City Hall flagpoles.

50.     Defendants' policies, practices, and actions in denying a permit for use of

Defendants' designated public fora are a prior restraint on Plaintiffs' speech.

51.     Defendants' policies, practices, and actions leave in the hands of Defendants

unfettered discretion to deny a permit for protected First Amendment activity in a designated

public forum.

52.     Defendants' policies and practices are vague.

53.     Defendants' policies, practices, and actions are content-based restrictions on

Plaintiffs' speech.

54.     Defendants have violated Plaintiffs' right to Freedom of Speech by discriminating

against Plaintiffs on the basis of the content of their message.

55.     Defendants' policies, practices, and actions are viewpoint-based restrictions on

Plaintiffs' speech.

56.     Defendants have violated Plaintiffs' right to Freedom of Speech by discriminating

against Plaintiffs on the basis of the religious viewpoint of their speech.

57.     Defendants' policies, practices, and actions are not the least restrictive means to

accomplish any permissible government purpose sought to be served thereby.

58.     Defendants' policies, practices, and actions do not leave open ample alternative

channels of communication for Plaintiffs.

59.     Defendants' policies, practices, and actions are irrational and unreasonable, and

impose unjustifiable restrictions on constitutionally-protected speech.

60.     Defendants' policies, practices, and actions unconstitutionally chill and abridge the

right of Plaintiffs to freely speak and meet with other people.

61.     Defendants' violation of Plaintiffs' right to Freedom of Speech has caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury.

62.     Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties.

63.     As a direct and proximate result of Defendants' continuing violations of Plaintiffs' rights, Plaintiffs have in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of their ability to exercise their constitutional rights.

WHEREFORE, Plaintiffs pray that the Court grant the declaratory and injunctive relief set forth below and award such damages to Plaintiffs as are reasonable, just, and necessary under the circumstances.

**COUNT II**
**Violation of the Establishment Clause**
**of the First Amendment to the United States Constitution**

64.     Plaintiffs hereby reallege and adopt by reference each and every allegation in the preceding paragraphs numbered 1 through 47.

65.     The Establishment Clause of the First Amendment to the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, prohibits the establishment of any religion, hostility towards religion, and excessive government entanglement with religion.

66.     Defendants' policies, practices, and actions constitute a violation of the Establishment Clause because they are devoid of a secular purpose.

67.     Defendants' policies, practices, and actions constitute a violation of the Establishment Clause because they are not neutral, but are invidious and hostile, towards religion.

68.     Defendants' policies, practices, and actions discriminate against Plaintiffs and treat

Plaintiffs less favorably than applicants displaying "secular" flags as part of free speech activities in the City's designated public fora.

69.     Defendants' policies, practices, and actions constitute a violation of the Establishment Clause because they create an excessive government entanglement with religion.

WHEREFORE, Plaintiffs pray that the Court grant the declaratory and injunctive relief set forth below and award such damages to Plaintiffs as are reasonable, just, and necessary under the circumstances.

### COUNT III
**Violation of Equal Protection**
**Under the Fourteenth Amendment to the United States Constitution**

70.     Plaintiffs hereby reallege and adopt by reference each and every allegation in the preceding paragraphs numbered 1 through 47.

71.     Plaintiffs' right to Equal Protection under the laws is protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

72.     Defendants' policies, practices, and actions are unconstitutional abridgements of Plaintiffs' affirmative right to Equal Protection of the laws, are not facially neutral, and specifically target Plaintiffs' religious viewpoints and speech.

73.     Defendants' policies, practices, and actions are unconstitutional because they treat displays of "non-secular" flags differently than they treat displays of "secular" flags.

74.     Defendants' policies, practices, and actions are unconstitutional abridgements of Plaintiffs' right to Equal Protection of the laws because Defendants treat Plaintiffs differently from other similarly situated individuals and groups on the basis of the religious content, viewpoint, and expression of Plaintiffs' proposed presentation.

75.     Defendants' policies, practices, and actions are not supported by a compelling governmental interest sufficient to justify their enactment or enforcement against Plaintiffs.

76.     Defendants' policies, practices, and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served thereby.

77.     Defendants' policies, practices, and actions do not serve a significant government interest.

78.     Defendants' policies, practices, and actions do not leave open ample alternative channels of communication.

79.     Defendants' policies, practices, and actions are irrational and unreasonable, and impose irrational and unjustifiable restrictions on constitutionally protected speech.

80.     Defendants, in violation of the Equal Protection Clause, have caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivations of Plaintiffs' most cherished constitutional liberties.

81.     As a direct and proximate result of Defendants' continuing violations of Plaintiffs' rights, Plaintiffs have in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of the ability to exercise their constitutional rights.

WHEREFORE, Plaintiffs pray that the Court grant the declaratory and injunctive relief set forth below and award such damages to Plaintiffs as are reasonable, just, and necessary under the circumstances.

## COUNT IV
### Violation of Freedom of Speech
### Under Article 16 of the Massachusetts Declaration of Rights

82.     Plaintiffs hereby reallege and adopt by reference each and every allegation in the preceding paragraphs numbered 1 through 47.

83.     Defendants violated Plaintiffs' right to Freedom of Speech under Article 16 of the Massachusetts Declaration of Rights by preventing Plaintiffs from displaying the Christian flag as

part of a celebration of the Christian community and America's Judeo-Christian heritage to be held at Defendants' designated public fora at City Hall Plaza and the City Hall flagpoles.

84.    Defendants' policies, practices, and actions in denying a permit for use of Defendants' designated public fora are a prior restraint on Plaintiffs' speech.

85.    Defendants' policies, practices, and actions leave in the hands of Defendants unfettered discretion to deny a permit for protected speech activity in a designated public forum.

86.    Defendants' policies and practices are vague.

87.    Defendants' policies, practices, and actions are content-based restrictions on Plaintiffs' speech.

88.    Defendants have violated Plaintiffs' right to Freedom of Speech by discriminating against Plaintiffs on the basis of the content of their message.

89.    Defendants' policies, practices, and actions are viewpoint-based restrictions on Plaintiffs' speech.

90.    Defendants have violated Plaintiffs' right to Freedom of Speech by discriminating against Plaintiffs on the basis of the religious viewpoint of their speech.

91.    Defendants' policies, practices, and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served thereby.

92.    Defendants' policies, practices, and actions do not leave open ample alternative channels of communication for Plaintiffs.

93.    Defendants' policies, practices, and actions are irrational and unreasonable, and impose unjustifiable restrictions on constitutionally-protected speech.

94.    Defendants' policies, practices, and actions unconstitutionally chill and abridge the right of Plaintiffs to freely speak and meet with other people.

95.     Defendants' violation of Plaintiffs' right to Freedom of Speech has caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury.

96.     Plaintiffs have no adequate remedy at law to correct the continuing deprivations of their most cherished constitutional liberties.

97.     As a direct and proximate result of Defendants' continuing violations of Plaintiffs' rights, Plaintiffs have in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of their ability to exercise their constitutional rights.

WHEREFORE, Plaintiffs pray that the Court grant the declaratory and injunctive relief set forth below and award such damages to Plaintiffs as are reasonable, just, and necessary under the circumstances.

### COUNT V
**Violation of Nonestablishment of Religion
Under Articles 2 and 3 of the Massachusetts Declaration of Rights**

98.     Plaintiffs hereby reallege and adopt by reference each and every allegation in the preceding paragraphs numbered 1 through 47.

99.     Articles 2 and 3 of the Massachusetts Declaration of Rights prohibit the establishment of any religion, hostility towards religion, and excessive government entanglement with religion.

100.    Defendants' policies, practices, and actions constitute a violation of the nonestablishment provisions because they are devoid of a secular purpose.

101.    Defendants' policies, practices, and actions constitute a violation of the nonestablishment provisions because they are not neutral, but are invidious and hostile, towards religion.

102.    Defendants' policies, practices, and actions discriminate against Plaintiffs and treat Plaintiffs less favorably than applicants displaying "secular" flags as part of free speech activities

in the City's designated public fora.

103.     Defendants' policies, practices, and actions constitute a violation of the nonestablishment provisions because they create an excessive government entanglement with religion.

WHEREFORE, Plaintiffs pray that the Court grant the declaratory and injunctive relief set forth below and award such damages to Plaintiffs as are reasonable, just, and necessary under the circumstances.

**COUNT VI**
**Violation of Equal Protection**
**Under Articles 1 and 3 of the Massachusetts Declaration of Rights**

104.     Plaintiffs hereby reallege and adopt by reference each and every allegation in the preceding paragraphs numbered 1 through 47.

105.     Plaintiffs' right to equal protection under the laws is protected by Articles 1 and 3 of the Massachusetts Declaration of Rights.

106.     Defendants' policies, practices, and actions are unconstitutional abridgements of Plaintiffs' affirmative right to equal protection of the laws, are not facially neutral, and specifically target Plaintiffs' religious viewpoints and speech.

107.     Defendants' policies, practices, and actions are unconstitutional because they treat displays of "non-secular" flags differently than they treat displays of "secular" flags.

108.     Defendants' policies, practices, and actions are unconstitutional abridgements of Plaintiffs' right to equal protection of the laws because Defendants treat Plaintiffs differently from other similarly situated individuals and groups on the basis of the religious content, viewpoint, and expression of Plaintiffs' proposed presentation.

109.     Defendants' policies, practices, and actions are not supported by a compelling governmental interest sufficient to justify their enactment or enforcement against Plaintiffs.

110.    Defendants' policies, practices, and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served thereby.

111.    Defendants' policies, practices, and actions do not serve a significant government interest.

112.    Defendants' policies, practices, and actions do not leave open ample alternative channels of communication.

113.    Defendants' policies, practices, and actions are irrational and unreasonable, and impose irrational and unjustifiable restrictions on constitutionally protected speech.

114.    Defendants, in violation of Plaintiffs' rights to equal protection of the laws, have caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivations of Plaintiffs' most cherished constitutional liberties.

115.    As a direct and proximate result of Defendants' continuing violations of Plaintiffs' rights, Plaintiffs have in the past and will continue to suffer in the future direct and consequential damages, including but not limited to, the loss of the ability to exercise their constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

A.    Immediately issue a preliminary injunction enjoining Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, from violating Plaintiffs' constitutional and statutory rights so that:

    (1)    Defendants shall not deny a permit to Plaintiffs for use of designated public fora, including the City Hall Flag Poles, for display of "non-secular" flags, including the Christian flag, based on the content or viewpoint of the display;

    (2)    Defendants shall not deny Plaintiffs the opportunity to have a description of their event on the City Hall Website;

(3)    Defendants shall not impose a prior restraint upon Plaintiffs' right to display a "non-secular" flag, including the Christian flag, on designated public fora, including the City Hall Flag Poles;

(4)    Defendants' policies, practices, and actions shall not be used in any other manner to infringe upon Plaintiffs' Constitutional rights; and

(5)    Plaintiffs shall be allowed to conduct the Christian flag-raising event that Defendants denied in 2017, at City Hall Plaza and the City Hall Flagpoles, on Constitution Day and Citizenship Day, September 17, 2018, or on such alternative date as close as possible to September 17, 2018, which allows sufficient time for the Court to issue the preliminary injunction, and on which the fora are available based on other previously and properly scheduled uses of the fora; and

B.    Issue a permanent injunction enjoining Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them, from violating Plaintiffs' constitutional and statutory rights so that:

(1)    Defendants shall not deny a permit to Plaintiffs for use of designated public fora, including the City Hall Flag Poles, for display of "non-secular" flags, including the Christian flag, based on the content or viewpoint of the display;

(2)    Defendants shall not deny Plaintiffs the opportunity to have a description of their event on the City Hall Website;

(3)    Defendants shall not impose a prior restraint upon Plaintiffs' right to display a "non-secular" flag, including the Christian flag, on designated public fora, including the City Hall Flag Poles; and

(4)    Defendants' policies, practices, and actions shall not be used in any other manner to infringe upon Plaintiffs' Constitutional rights; and

C.    Enter a declaratory judgment, declaring that:

(1)    Defendants' policy and practice of refusing to allow the flying of "non-secular" flags on the City Hall Flag Poles, and Defendants' actions in denying Plaintiffs' request to display the Christian flag, are invalid under the First and Fourteenth

Amendments to the United States Constitution and under the Massachusetts Constitution and laws; and

(2)   Defendants unlawfully obstructed Plaintiffs from exercising Plaintiffs' constitutionally protected rights by:

(a)   Subjecting Plaintiffs to an unconstitutional prior restraint on displaying a flag as part of a free speech event;

(b)   Preventing Plaintiffs from displaying a flag as part of a free speech event based on the content or viewpoint of the display;

(c)   Treating Plaintiffs' display unequally with secular or nonreligious displays;

(d)   Denying Plaintiffs a permit for use of designated public fora, including the City Hall Flag Poles for display of the Christian flag as part of a free speech event; and

(e)   Denying Plaintiffs the opportunity to have a description of their display placed on the City Hall Website; and

D.   Award to Plaintiffs such damages as are a direct and proximate result of Defendants' violations of Plaintiffs' constitutional and statutory rights, and as are otherwise allowed by law and reasonable and just under the circumstances;

E.   Award to Plaintiffs nominal damages for the violation of Plaintiffs' constitutional and statutory rights;

F.   Adjudge, decree, and declare the rights and other legal relations of Plaintiffs with respect to the subject matter hereof, in order that such declaration shall have the force and effect of final judgment;

G.   Retain jurisdiction of this case for the purpose of enforcing this Court's orders;

H.   Award Plaintiffs the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. §1988; and

I.      Grant such other and further relief as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.


Respectfully submitted,

/s/ Ryan P. McLane_____
Ryan P. McLane (Mass. 697464)
MCLANE & MCLANE
975A Springfield Street
PO Box 105
Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com

/s/ Roger K. Gannam_____
Mathew D. Staver (Fla. 701092)[†]
Horatio G. Mihet (Fla. 26581)[†]
Roger K. Gannam (Fla. 240450)[†]
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
407-875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org

Attorneys for Plaintiffs
[†]Application to appear *pro hac vice* pending

## VERIFICATION

I, Harold Shurtleff, state that I have read and reviewed the foregoing Complaint and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed on: _July 6, 2018_

_Harold J. Shurtleff_
Harold Shurtleff