### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

| | | |
|---|---|---|
| HAROLD SHURTLEFF, and CAMP CONSTITUTION, a public charitable trust, | : | CIVIL ACTION |
| | : | |
| | : | No. 1:18-cv-11417-DJC |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF BOSTON, and GREGORY T. ROONEY, in his official capacity as Commissioner of the City of Boston Property Management Department, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO
### <u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Ryan P. McLane (Mass. 697464)
MCLANE & MCLANE
975A Springfield Street
PO Box 105
Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com

Mathew D. Staver (Fla. 701092)[†]
Horatio G. Mihet (Fla. 26581)[†]
Roger K. Gannam (Fla. 240450)[†]
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854-0774
(407) 875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org

*Attorneys for Plaintiffs*
[†]Admitted to appear *pro hac vice*.

Plaintiffs, HAROLD SHURTLEFF and CAMP CONSTITUTION, pursuant to Local Rule 7.1, file this memorandum in opposition to the Motion for Judgment on the Pleadings (D.39, "Motion") and Memorandum in Support (D.40, "Memo"), filed by Defendants, CITY OF BOSTON ("Boston" or the "City"), and GREGORY T. ROONEY, in his official capacity as Commissioner of the City of Boston Property Management Department ("Rooney").

## ARGUMENT

### *Rule 12(c) Judgment on the Pleadings Standard*

"A motion for judgment on the pleadings bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and those two motions are treated in much the same way." *Kandov v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018). Put simply, "the district court must accept all of the nonmoving party's well-pleaded factual averments as true and draw all reasonable inferences in her favor." *Reliciano v. Rhode Island*, 160 F.3d 780, 788 (1st Cir. 1998). Indeed, "**a court may not grant a defendant's Rule 12(c) motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief**." *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004) (emphasis added); *see also Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006) ("[A] court may enter judgment on the pleadings only if the uncontested and properly considered facts **conclusively** establish the movant's entitlement to favorable judgment." (emphasis added)). A Rule 12(c) motion for judgment on the pleadings "does not allow for the resolution of contested facts," *Aponte-Torres*, 445 F.3d at 54, and "the fate of such a motion will depend on whether the pleadings, taken as a whole, reveal any **potential dispute** about one or more of the material facts." *Gulf Coast*, 355 F.3d at 38 (emphasis added).

Importantly, Rule 12(c) "imposes a **relatively modest hurdle for the nonmovant**." *Id.* (emphasis added). That is because motions under Rule 12(c)—like Rule 12(b)(6)—are "viewed

with disfavor and **rarely granted**." *Druke v. Sullivan*, 334 F. Supp. 861, 864 (D. Mass. 1971) (emphasis added); *Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.*, 536 F. Supp. 1065, 1072 (E.D. Pa. 1982) (disfavoring motions for judgment on the pleadings because "[i]f a complaint contains even the most basic of allegations that, when read with great liberality, could justify plaintiff's claim for relief, motion for judgment on the pleadings should be denied"); *Allen v. Travis*, No. 3:06-cv01361-M(BH), 2008 WL 4602734, *2 (N.D. Tex. Oct. 10, 2008) ("Motions to dismiss under Rule 12(c) are disfavored and rarely granted.").

The Court's interlocutory Memorandum and Order (D.19) denying Plaintiffs' motion for preliminary injunction (currently on appeal to the First Circuit) was decided under the likelihood of success standard for preliminary injunctions, not the much lower, "relatively modest hurdle" Plaintiffs must overcome to defeat Defendants' motion for judgment on the pleadings, and therefore does not dictate the disposition of Defendants' Motion. *See Gulf Coast*, 355 F.3d at 38. To be sure, the Court made intent and other factual determinations in the preliminary injunction order that cannot be made in the Rule 12(c) context, where the Court must accept **Plaintiffs'** allegations as true and draw all reasonable inferences in their favor. *See Reliciano*, 160 F.3d at 788. Moreover, the preliminary injunction order does not constitute law of the case. *See, e.g.*, *Latin Am. Music Co., Inc. v. Media Power Grp., Inc.*, 705 F.3d 34 (1st Cir. 2013); *Automatic Radio Mfg. Co. v. Ford Motor Co.*, 272 F. Supp. 744, 748 (D. Mass. 1967).

## I.   DEFENDANTS IMPROPERLY ATTEMPT TO RESOLVE FACTUAL DISPUTES AT THE JUDGMENT ON THE PLEADINGS STAGE.

Contrary to the settled black letter law concerning Rule 12(c) motions, Defendants ask this Court to do that which it is forbidden from doing at this stage, namely—to resolve factual disputes in Defendants' favor. See *Aponte-Torres*, 445 F.3d at 54. Indeed, Defendants' quest for judgment on the pleadings is littered with requests for this Court to draw inferences in their favor, resolve

fundamental questions of fact, and bypass the well-pleaded allegations of Plaintiffs' Complaint. Defendants' attempts must be rejected, and their motion denied.

### A.     Defendants' Request That This Court Resolve Questions of Intent in a Motion for Judgment on the Pleadings Is Improper as a Matter of Law.

Defendants improperly ask the Court to resolve questions of both their intent and Plaintiffs' intent in seeking access to the City Hall Flag Poles forum.[1] But these questions cannot be resolved on a Rule 12(c) motion for judgment on the pleadings.

### 1.     Determination of Defendants' Discriminatory Intent in Denying Plaintiffs' Access to the Flag-Poles Forum Are Questions of Fact Improper for Resolution on a Motion for Judgment on the Pleadings.

Time and again in their motion, Defendants attempt to plead their actual intent in denying Plaintiffs' access to the Flag Poles. (*See* Memo at 5 (arguing Defendants had no intention to discriminate on basis of viewpoint); *id.* at 10 (same); *id.* at 11 (arguing Defendants did not intend to "discriminate between religious viewpoints"); *id.* at 13 (arguing Defendants did not intend "to restrict the Plaintiffs' expression of a Christian viewpoint"); *id.* at 15 (arguing Defendants did not intend "to silence Plaintiffs").) Determining such questions, however, is improper at this stage. Indeed, the government's intent to discriminate is a "pure question of fact." *Pullman-Standard v. Swint*, 456 U.S. 273, 287–88 (1982). *See also*, *Petitti v. New England Tel. & Tel. Co*, 909 F.2d 28, 32 (1st Cir. 1980) ("**Intent to discriminate is a question of fact** and we must leave this determination to the jury." (emphasis added)); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 895 (1st Cir. 1988). Thus, as a matter of binding law, this Court is precluded from making this

---

[1]     V. Compl. Ex. H, D.1-8, at 2 ("This application applies to any public event proposed to take place at . . . the City Hall Flag Poles.").

determination until Plaintiffs are given the opportunity to probe Defendants' intentions and motivations in refusing Plaintiffs' requests for access to the designated Flag Poles forum.

> **2.**     **Plaintiffs' Intent and Purpose in Seeking Access to the Flag Poles Forum Are Questions of Fact Improper for Resolution on a Motion for Judgment on the Pleadings.**

Not only do Defendants attempt to submit questions of their intent in their motion, but they also litter their motion with requests for the Court to resolve questions of Plaintiffs' intent in seeking access to the Flag Poles. (Memo at 9 (arguing Plaintiffs' intent is "to convey government endorsement of their views"); *id.* at 16 (contesting Plaintiffs' "purpose" in seeking access to Flag Poles).) These questions are likewise improper at this stage. Indeed, questions of the parties' intent or purpose in seeking access to the Flag Poles are "for the factfinder, who must ferret out the intent of the parties." *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995); *see also Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983) (reserving for jury factual questions of party's intent and purposes in acting); *Rua v. Glodis*, 52 F. Supp. 3d 84, 97 (D. Mass. 2014) ("It is true that questions of intent or mental state generally present questions of fact . . . .").

> **B.**     **Defendants' Contentions Concerning the Perspective of a Reasonable Observer Are "Fact-Sensitive Inquiries" Improper for Resolution on a Motion for Judgment on the Pleadings.**

Defendants also contend frequently that the perspective of the reasonable observer must be determined at this stage and, unsurprisingly, in Defendants' favor. But, this issue is also one reserved for the factfinder. *See, e.g.*, *Salazar v. Buono*, 559 U.S. 700, 721 (2010) (explaining questions relating to perception of "reasonable observer" are "fact-sensitive inquiry" and thus questions of fact); *Town of Greece v. Galloway*, 572 U.S. 565, 586 (2014) (describing as "fact-sensitive" questions involving Establishment Clause and reasonable observer); *Lee v. Weisman*, 505 U.S. 577, 597 (1992) ("Our Establishment Clause jurisprudence remains a delicate and fact-

sensitive one."); *Bader v. Wren*, 532 F. Supp. 2d 308, 313 (D.N.H. 2008) (same). Thus, the perception of a reasonable observer fully aware of the surrounding circumstances is a question that must be resolved after the close of discovery when Plaintiffs have been given the opportunity to probe and adduce evidence concerning their claims.

C.   **Defendants' Control over Access to the Flag Poles Forum and Other Aspects of Ceremonies at the Forum Are Factual Questions.**

Defendants also raise a host of other issues that are undoubtedly questions for which discovery must be permitted. For example, Defendants contend that the City maintains "direct control" over the flags flown on the Flag Poles (Memo at 9), contend that City employees raise the flags on the Flag Poles (Memo at 10), contend that events "**likely** include[e] a podium displaying the City seal (*id.* (emphasis added)), contend that the City has a policy of "categorical exclusion of non-secular flags" (Memo at 15), and raise a litany of other factual issues. Not only are these contentions contrary to the well-pleaded allegations of Plaintiffs' Complaint, *see infra* Pars II–IV, but they are unquestionably improper at this stage of the proceedings. Indeed, "Rule 12(c) **does not allow for any resolution of contested facts**." *Aponte-Torres*, 445 F.3d at 54 (emphasis added). Defendants' attempts to circumvent the axiomatic principles applicable to Rule 12(c) cannot be countenanced.

II.   **PLAINTIFFS' WELL-PLEADED ALLEGATIONS ARE PLAINLY SUFFICIENT TO STATE A CLAIM FOR VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT.**

Plaintiffs' well-pleaded complaint allegations, which must be accepted as true, *Reliciano*, 160 F.3d at 788, plainly state a claim for violation of the First Amendment: Defendants have designated the Flag Poles a public forum, have treated the Flag Poles as a public forum, have discriminated on the basis of the viewpoint and content of Plaintiffs' speech, and maintain a policy and practice of impermissible prior restraint.

### A. Plaintiffs' Well-Pleaded Allegations Demonstrate That Defendants Have Created a Designated Public Forum at the City Hall Flag Poles.

#### 1. The Forum Is Determined by the Access Sought by Plaintiffs.

It is now axiomatic that proper characterization of the forum requires the Court to look at the access sought by the speaker. *See, e.g.*, *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985) ("[I]n defining the forum we have focused on the access sought by the speaker."); *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45-46 (1983) (determining relevant forum by access sought by speaker); *Irish Subcommittee of R.I. Hertigage Comm'n v. R.I. Heritage Comm'n*, 646 F. Supp. 347, 352 (D.R.I. 1986) (same).

Here, Plaintiffs' well-pleaded allegations plainly demonstrate that the access they sought was to the Flag Poles forum in which Defendants have permitted a host of other organizations to raise flags associated with their events. (V. Compl., D.1 ("VC"), ¶ 24 (alleging Plaintiffs requested access to Flag Poles forum); VC ¶ 30 (same).)

#### 2. Defendants' Policies and Practices Create a Designated Public Flag-Pole Forum.

"[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for speech or assembly, for use by certain speakers, or for the discussion of certain subjects." *Cornelius*, 473 U.S. at 802; *Perry Educ. Ass'n*, 460 U.S. at 45–46, n.7. "Designated public fora . . . are created by purposeful government action." *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998). Indeed, "the government creates a designated public forum "by intentionally opening a nontraditional forum for public discourse." *Cornelius*, 473 U.S. at 802. To determine whether a designated public forum has been opened, courts look to the "policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum," and "the property and its compatibility with expressive activity to discern the government's intent." *Id.*

      **a.**      **Defendants' Policies Create a Designated Public Flag Poles Forum.**

Plaintiffs' well-pleaded allegations plainly demonstrate that Defendants intended to, and indeed did, open up a forum for expressive activity on the Flag Poles. As the First Circuit has noted, to determine the intent of the government to open a limited public forum, this Court "must consider both explicit expressions about intent and the policy and practice of the government." *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 76 (1st Cir. 2004). In *Ridley*, the First Circuit held that the government had not created a designated public forum because the government explicitly stated in its policy that it "intends that its facilities constitute nonpublic forums." *Id.* at 77. Contra here, as Plaintiffs' well-pleaded allegations show, **Defendants expressly label the Flag Poles a "public forum" and state their intention to treat the Flag Poles as a "public forum."** (VC ¶¶ 34–35; VC Ex. H at 2 ("This application applies to any public event proposed to take place at . . . the City Hall Flag Poles."); *id.* at 3 ("[T]he [City] **seeks to accommodate all applicants seeking to take advantage of the City of Boston's <u>public forums</u>**." (emphasis added)).) "In short, words matter." *Nadherny v. Roseland Prop. Co., Inc.*, 390 F.3d 44, 49 (1st Cir. 2004). Defendants' own words express their intent not only to name the Flag Poles a "public forum," but also to treat them as a public forum. The Court must accept this, and all other factual allegations of Plaintiffs as true, and must reject Defendants' contrary assertions.

      **b.**      **Defendants' Actions and Conduct Create a Designated Public Flag Poles Forum.**

While it is true that, standing alone, "a government actor's stated intent cannot determine the nature of the forum in the face of countervailing actions by that actor," *Am. Freedom Def. Initiative v. Mass. Bay Tranp. Auth.*, 781 F.3d 571, 580 (1st Cir. 2015), when such stated intentions are consistent with the government's own conduct to open a forum, a designated public forum has

been created. *Id.* Here, as Plaintiffs' well-pleaded factual allegations demonstrate, Defendants have engaged in conduct and activity that purposefully opens a nontraditional forum for public discourse. (VC ¶ 33 (alleging Defendants have "made available designated public spaces in the city where citizens can engage in First Amendment activities," including "City Hall Flag Poles"); VC ¶ 36 (alleging Defendants permitted the Portuguese-American festival, which included raising a flag displaying religious symbolism); VC ¶ 37 (alleging Defendants have permitted private organizations and groups to raise various flags on Flag Poles, including flags associated with numerous countries, Chinese Progressive Association, National Juneteenth Observation Foundation, Bunker Hill Association, and Boston Pride); VC ¶ 41 (alleging Defendants have permitted flags of numerous organizations that display and incorporate religious images and symbolism).) Thus, both Defendants' stated intentions and their actions demonstrate that Defendants intended to and did open a designated public Flag Poles forum.

### B.   Plaintiffs' Well-Pleaded Allegations Demonstrate That Defendants Have Impermissibly Discriminated Against Plaintiffs' Speech on the Basis of Viewpoint.

A viewpoint-based restriction on private speech has never been upheld by the Supreme Court, or any court. Indeed, a finding of viewpoint discrimination is dispositive. *See Sorrell v. IMS Health*, 131 S. Ct. 2653, 2667 (2011). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Id.* at 829. In fact, **viewpoint-based regulations are always unconstitutional**. *See, e.g.*, *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) ("'[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints

or ideas at the expense of others.'" (quoting *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984)); *see also McGuire v. Reilly*, 386 F.3d 45, 62 (1st Cir. 2004) (same).

Here, Plaintiffs plainly have alleged that Defendants have restricted their access to the Flag Poles on the basis of Plaintiffs' particular religious viewpoint. (VC ¶ 29 (alleging City denied Plaintiffs' request because Christian flag is "non-secular"); *id.* (alleging City informed Plaintiffs they would be granted access to Flag Poles forum for "non-religious flag"); VC ¶ 39 (same); VC ¶ 41 (alleging Defendants have permitted other organization to fly flags with different religious symbolism and imagery); VC ¶ 43 (alleging Defendants' policies and practices exclude certain religious flags on the basis of viewpoint); VC ¶ 56 (alleging Defendants discriminated against Plaintiffs' flag on the basis of its religious viewpoint).) Indeed, Defendants even admit that their officials denied Plaintiffs' permit because it included raising a "non-secular flag." (Memo at 2.) As these allegations make plain, Defendants have excluded Plaintiffs from the Flag Poles forum solely on the basis that the proposed flag was "non-secular" (*i.e.*, expressed a religious viewpoint). These allegations, and Defendants' own admissions, are sufficient to state a claim under the First Amendment, particularly since such allegations must be accepted as true at this stage.

C. **Plaintiffs' Well-Pleaded Allegations Demonstrate That Defendants Have Impermissibly Discriminated Against Plaintiffs' Speech on the Basis of Content and Cannot Withstand Strict Scrutiny.**

"Content-based laws—those that target speech on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling government interests." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992) (same). "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both distinctions are drawn based on the message a speaker conveys, and, therefore, are subject to strict

scrutiny." *Reed*, 135 S. Ct. at 2227. Put simply, the Supreme Court has handed down a firm rule: **laws that are content based on their face must satisfy strict scrutiny**. *Id.*; *see also id.* at 2233 ("As the Court holds, what we have termed 'content-based' laws must satisfy strict scrutiny.") (Alito, J., concurring).

Importantly, this firm rule mandating strict scrutiny of facially content-based restrictions applies regardless of the government's alleged purpose in enacting the law. *Id.* at 2227. "On its face, the [law] is a content-based regulation of speech. We thus have no need to consider the government's justifications or purposes for enacting the [law] to determine whether it is subject to strict scrutiny." *Id.* In so holding, the Court rejected the lower court's rationale that the alleged purpose behind enacting the content-based law can justify subjecting it to diminished constitutional protection. *Id.* "But this analysis skips the crucial first step . . . determining whether the law is content neutral on its face." *Id.* at 2228. The answer to that question, the *Reed* Court said, is dispositive of the level of scrutiny applicable to the regulation of speech. *Id.* "**A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech**." *Id.* (emphasis added). "[A]n innocuous justification cannot transform a facially content-based law into one that is content neutral." *Id.*

### 1.   Plaintiffs' Well-Pleaded Allegations Show Defendants Have Discriminated on the Basis of Content.

Plaintiffs' well-pleaded allegations also show that Defendants denied access to the Flag Poles on the basis of the content of Plaintiffs' flag. (VC ¶ 29 (alleging City denied Plaintiffs' request to fly Christian flag on Flag Poles because its content was "non-secular"); *id.* (alleging City informed Plaintiffs they would be granted access to Flag Poles for "non-religious flag"); VC ¶ 39 (same); VC ¶ 41 (alleging Defendants have permitted other organizations to fly flags with

different religious symbolism and imagery); VC ¶ 43 (alleging Defendants discriminated against Plaintiffs' expression because of the religious content of Plaintiffs' proposed flag); VC ¶ 53 (alleging Defendants' policies and practices are content-based restrictions on Plaintiffs' speech); VC ¶ 54 (alleging Defendants discriminated against Plaintiffs' flag because of its "non-secular" content).

> **2.    Defendants' Discriminatory Treatment of Plaintiffs' Speech Is Not Supported by a Compelling Government Interest, Because, As a Matter of Established Law, the Establishment Clause Cannot Be Violated By Providing Religious Groups With Equal Access to a Public Forum.**

Defendants contend they have a compelling interest in preventing an Establishment Clause violation. (Memo at 14.) But this contention ignores the well-pleaded allegations of Plaintiffs' Complaint, Defendants' past practices of permitting flags displaying religious symbols and imagery, and black letter law holding that the Establishment Clause cannot be violated by providing equal access and treatment to Plaintiffs.

Defendants have no interest whatsoever, much less a compelling one, in denying Plaintiffs' speech when the City permits the same speech from a non-religious perspective. Defendants' feigned interest in avoiding Establishment Clause concerns is actually foreclosed, completely, by entrenched Supreme Court precedent. "Religious expression **cannot** violate the Establishment Clause where [as here] it (1) is purely private and (2) occurs in a traditional or designated public forum, publicly announced and open to all on equal terms." *Capital Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 770 (1995) (emphasis added). "It does not violate the Establishment Clause for a [government body] to grant access to its facilities on a religion-neutral basis to a wide spectrum of … groups, including groups that use meeting rooms for **sectarian activities**, accompanied by some devotional exercises." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 842 (1995) (emphasis added). *See also Good News Club v. Milford Cent. Sch. Dist.*,

533 U.S. 98, 114-15 (2001) (no Establishment Clause violation to allow religious group equal access to public forum); *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1068 (4th Cir. 2006) ("Government need not fear an Establishment Clause violation from allowing religious groups to speak under the same reasonable, viewpoint-neutral terms as other private parties."). Having opened a public forum to all manner of private speakers, Defendants cannot justify their exclusion of Plaintiffs' religious viewpoints on Establishment Clause grounds.

Moreover, "a significant factor in upholding governmental [actions] in the face of an Establishment Clause attack is their **neutrality towards religion**." *Rosenberger*, 515 U.S. at 839 (emphasis added). Such a "guarantee of neutrality is respected, not offended, when the government, following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, **including religious ones**, are broad and diverse." *Id.* (emphasis added). The Establishment Clause simply provides no justification for suppressing the religious content of Plaintiffs' expression in a forum that is available to similarly situated private speakers. *See id.* (noting that Supreme Court has "rejected the position that the Establishment Clause even justifies, much less requires, a refusal to extend free speech rights to religious speakers who participate in broad-reaching governmental programs neutral in design"). In fact, the City's policy and practice to exclude religious flags from their public forum are not only unjustified by the Establishment Clause, but are a clear violation of its neutrality mandate. *See infra* Part III.

Additionally, Defendants' contentions are contrary to the well-pleaded allegations of Plaintiffs' Complaint exposing Defendants' own practices. Defendants simply cannot claim an interest in avoiding an Establishment Clause violation when they have permitted religious imagery and symbols on the flags of favored speakers in the Flag Poles forum. (*See, e.g.*, VC ¶ 41 (alleging

City's own flag contains Latin religious phrase translating to "God be with us as he was with our fathers"); *id.* (alleging City has permitted Bunker Hill Flag, which includes religious imagery of a cross nearly identical to the image on Plaintiffs' proposed flag); VC ¶ 36 (alleging City has permitted Portuguese flag on Flag Poles with its imagery representing the "five wounds of Christ" and other religious imagery); *id.* (alleging Defendants promoted event on City website explaining religious imagery on flag).

Thus, Defendants' feigned interest in preventing an Establishment Clause violation flies in the face of settled law and Defendants' own past practices as illuminated by the well-pleaded allegations of Plaintiffs' Complaint.

### 3.   Plaintiffs' Well-Pleaded Allegations Show That Defendants' Discriminatory Treatment of Plaintiffs' Speech Is Not the Least Restrictive Means.

Even if Defendants could articulate a compelling interest for excluding religious speech, which they cannot, the Flag Poles forum policy and Defendants' actions would still fail strict scrutiny because the policy is not narrowly tailored. "It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (189). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). Total prohibitions on constitutionally protected speech are substantially broader than any conceivable government interest could justify. *Bd. of Airport Comm'rs of City of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987). Indeed, Defendants cannot "burn the house to roast the pig." *Sable Commc'ns*, 492 U.S. at 127 (quoting *Butler v. Michigan*, 352 U.S. 380, 383 (1957)). A narrowly tailored regulation of speech is one that achieves the government's interest "without unnecessarily interfering with First Amendment freedoms." *Id.* at 126. By purportedly prohibiting any "non-secular speech," the unwritten policy

13

and Defendants' applications of it completely prohibit and unnecessarily interfere with the speech of religious organizations. The policy is therefore not narrowly tailored.

### D.     Plaintiffs' Well-Pleaded Allegations Demonstrate That Defendants' Flag Poles Policy Is an Unconstitutional Prior Restraint.

Defendants' unwritten, standard-less policy and practice is also an unconstitutional prior restraint that vests unbridled discretion in City officials to determine whether a display is "non-secular" and can be denied despite meeting all of the written criteria for use of Defendants' designated public fora. Prior restraints are highly suspect and disfavored. *See Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992). Indeed, "**[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity**." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) (emphasis added) (citing cases). "Because a censor's business is to censor, there inheres the danger that he may well be less responsive than a court . . . to the constitutionally protected interests in free expression." *Freedman v. Maryland*, 380 U.S. 51, 57–58 (1965).

> It is offensive—not only to the values protected by the First Amendment, but to the very notion of a free society—that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so. . . . **[A] law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition**.

*Watchtower Bible & Tract Soc'y of N.Y. v. Vill. of Stratton*, 536 U.S. 150, 165–66 (2002) (emphasis added).

> [A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority. The reasoning is simple: If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted.

*Forsyth Cnty.*, 505 U.S. at 131 (internal quotation marks and citations omitted).

> It is settled by a long line of recent decisions of this Court that an ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226 (1990) (alteration in original) (internal quotation marks and citations omitted).

Defendants' unwritten policy and practice sits at the zenith of danger to First Amendment freedoms. The purported policy and practice is nowhere listed in written guidelines provided to applicants seeking to use Defendants' limited public fora (VC. ¶¶ 32, 35, Ex. G), nor was it mentioned in e-mail correspondence between Shurtleff, a longstanding user of the fora, and City staff, even after Shurtleff indicated that his event would include displaying the Christian flag (VC ¶¶ 19–25, Exs. B, C). Only after receiving word that his request had been denied, and then requesting a reason, was Shurtleff told by Rooney that this policy and practice existed and had been used to deny the permit. (VC ¶ 26, Ex. D.) Since the policy and practice is unwritten, there is no definition of "non-secular," nor any criteria for making a determination that the label should be applied. Rooney's comment at the end of his e-mail that the City would consider a request for a "non-religious" flag (VC ¶ 26, Ex. D) offers the only clue to the standard underlying the policy—opposition to religious displays, at least on the part of Rooney—which is an unlawful viewpoint-based restriction. Rooney's express statement that no religious displays will be allowed confirms that the policy and practice is a viewpoint-based prior restraint wholly incompatible with the First Amendment.

**III. PLAINTIFFS' WELL-PLEADED ALLEGATIONS ARE PLAINLY SUFFICIENT TO STATE A CLAIM FOR VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT.**

While Defendants contend that they are mandated to deny Plaintiffs' access to the designated Flag Poles forum to avoid violating the Establishment Clause (*see, e.g.*, Memo at 5), their hostility toward, and exclusion of, Plaintiffs' religious expression is the real Establishment Clause violation. The Establishment Clause "affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (citing *Zorach v. Clauson*, 343 U.S. 206 (1952)). *See also Hobbie v. Unemployment Appeals Com.*, 480 U.S. 136, 144–45 (1987) ("[T]he government may (and sometimes must) accommodate religious practices and . . . may do so without violating the Establishment Clause."). "Indeed, the message is one of neutrality rather than endorsement; **if a State refused to let religious groups use facilities open to others, then it would demonstrate not neutrality but hostility towards religion**." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 248 (1990) (emphasis added). Defendants' unwritten policy and practice here are hostile to religion in violation of the Establishment Clause.

The Establishment Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. 1. "By its terms that Clause applies only to the words and acts of *government*. It was never meant, and has never been read by this Court, to serve as an impediment to purely *private* religious speech connected to the State only through its occurrence in a public forum." *Capital Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 767 (1995) (emphasis original).

**A.      Plaintiffs' Well-Pleaded Allegations Demonstrate That They Were Denied Access to a Designated Public Forum for Private Expression.**

As demonstrated in Part II.A, *supra*, Defendants' intentional policies and practices made the City Hall Flag Poles a public forum. In that forum, Defendants have permitted private organizations to raise flags associated with their organizations. (VC ¶¶ 36-37, 41.) Thus, under the well-pleaded allegations of Plaintiffs' Complaint, *Pinette* mandates a finding that equal treatment extended to the religious expression of Plaintiffs' proposed flag "cannot violate the Establishment Clause." *Pinette*, 515 U.S. at 770.

**B.      Defendants' Policies and Practices Impermissibly Discriminate Against and Show Hostility Towards Religion.**

"The touchstone for our analysis is the principle that 'the First Amendment mandates governmental neutrality between religion and religion, and between religion and non-religion.'" *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005) (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)). Indeed, "[t]he fullest realization of true religious liberty requires that government neither engage in nor compel religious practices, that it effect no favoritism among sects or between religion or nonreligion, and that it work deterrence of no religious belief." *Sch. Dist. of Abington, Tp. v. Schempp*, 374 U.S. 203, 305 (Goldberg, J., concurring); *see also Van Orden v. Perry*, 545 U.S. 677, 690 (Breyer, J., concurring) (same). Under the well-pleaded allegations of Plaintiffs' Complaint, Defendants have violated both aspects of the Establishment Clause by discriminating between religion and nonreligion, and between various religious symbols.

**1.      Plaintiffs' Well-Pleaded Allegations Demonstrate That Defendants' Policies and Practices Impermissibly Discriminate Between Religion and Non-Religion.**

Defendants have permitted numerous organizations to raise flags in the Flag Poles forum when such flags contain, in Defendants' view, only "non-religious" or secular symbols. (VC ¶ 37

(alleging Defendants have made Flag Poles "available to private organizations to raise flags related to ethnic and other cultural celebrations, the arrival of dignitaries from other countries, the commemoration of independence or other historic events in other countries, or the celebration of certain causes such as 'gay pride'"); *id.* (noting many countries' flags have been raised on Flag Poles); *id.* (alleging Defendants have permitted Chines Progressive Association, National Juneteenth Observance Foundation, and Boston Pride to access designated public Flag Poles forum).) All such "non-religious" flags were permitted to access the forum, but Plaintiffs' "non-secular" flag was rejected. (VC ¶ 29.) This is textbook discrimination between religion and non-religion, and violates the Establishment Clause.

> **2.    Plaintiffs' Well-Pleaded Allegations Demonstrate That Defendants' Policies and Practices Impermissibly Discriminate Between Religious Sects.**

Moreover, Defendants have permitted certain organizations to raise flags containing religious imagery and symbols on the Flag Poles. (VC ¶ 36 (alleging Defendants permitted Portuguese flag displaying symbols of the "five wounds of Christ when crucified" and "coins Judas received for having betrayed Christ"); VC ¶ 41 (alleging City's own flag displays words translating to "God be with us as he was with our fathers"); *id.* (alleging Defendants permitted Bunker Hill Flag displaying cross design nearly identical to design on Plaintiffs' proposed flag).) As these allegations demonstrate, Defendants have permitted religious imagery and symbols to be displayed on the Flag Poles, but have shown hostility towards Plaintiffs' religious sect.

## IV.    PLAINTIFFS' WELL-PLEADED ALLEGATIONS ARE PLAINLY SUFFICIENT TO STATE A CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.

The Equal Protection Clause of the Fourteenth Amendment makes it unconstitutional for any state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "The concept of equal protection has been traditionally viewed as

requiring the uniform treatment of persons standing in the same relation to the government action questioned or challenged." *Reynolds v. Sims*, 377 U.S. 533, 565 (1964). To establish an equal protection claim, a plaintiff needs to allege facts showing that "the person, compared with other similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible consideration such as . . . religion." *Davis v. Coakley*, 802 F.3d 128, 133 (1st Cir. 2015). Here, Plaintiffs' well-pleaded allegations demonstrate that they were treated differently from similarly situated groups, based on Plaintiffs' religious identity.

**A.   Plaintiffs' Well-Pleaded Allegations Demonstrate Defendants' Policies and Practices Impermissibly Discriminate on the Basis of Religious Identity.**

Plaintiffs' well-pleaded allegations show that they were treated differently from other similarly situated non-profit, civic organizations. (VC ¶¶ 36, 37, 41 (alleging Defendants permitted other organizations to raise their flags on Flag Poles).) When Plaintiffs requested access to the same Flag Poles to raise their flag, on the same terms as every other organization, Defendants refused to grant Plaintiffs access to the forum. (VC ¶¶ 29, 44.) Defendants' only justification offered for the denial was that Plaintiffs' proposed flag was religious. (VC ¶ 36 (alleging Defendants informed Plaintiffs they could not fly "Christian flag" because it was "non-secular" and that Plaintiffs would be granted equal access to Flag Poles if they selected a "non-religious flag"); VC ¶ 44 (alleging Defendant Rooney specifically told Plaintiffs they were denied access because proposed flag was religious). As shown *supra*, however, Defendants have allowed numerous flags containing religious content to hang on the Flag Poles.  Thus, as Plaintiffs' allegations make evident, Defendants treated Plaintiffs differently from other organizations, and the difference in treatment is based on the religious identity of Plaintiffs. This open exclusion of religious persons from use of the Flag Poles, while allowing non-religious persons to use the Flag Poles for similar purposes, is sufficient to support Plaintiffs' Equal Protection claims.

**B.  Plaintiffs' Well-Pleaded Allegations Demonstrate That Defendants'
Policies and Practices Impermissibly Discriminate on the Basis of
Content, Which Also Infringes Plaintiffs' Equal Protection Rights.**

Not only does Defendants' disparate treatment of similarly situated organizations on the
sole basis of religious identity violate the Equal Protection Clause, but Defendants' impermissible
discrimination on the basis of content is also a violation. Indeed, "[c]ontent-based restrictions on
speech also have been held to raise Fourteenth Amendment equal protection concerns because, in
the course of regulating speech, such restrictions differentiate between types of speech." *Burson
v. Freeman*, 504 U.S. 191, 197 n.3 (1992); *see also Erzoznik v. City of Jacksonville*, 422 U.S. 205,
215 (1975) (government "cannot discriminate on the basis of content" under both First
Amendment and Equal Protection Clause of Fourteenth Amendment); *Police Dep't of City of
Chicago v. Mosley*, 408 U.S. 92, 95 (1972); *McGuire v. Reilly*, 260 F.3d 36, 50 (1st Cir. 2001)
(recognizing content discrimination raises equal protection concerns).

As Plaintiffs have demonstrated, Defendants have excluded Plaintiffs' speech on the basis
of its religious content. Indeed, Defendants even admit as much in support of their Motion. (Memo
at 5 (admitting Defendants refuse to permit "non-secular" flags on Flag Poles).) This disparate
treatment based on the religious content of Plaintiffs' speech is a violation of Equal Protection.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' motion for judgment should be denied.

Respectfully submitted,

Ryan P. McLane (Mass. 697464)    /s/ Horatio G. Mihet
McLane & McLane    Mathew D. Staver (Fla. 701092)[†]
975A Springfield Street    Horatio G. Mihet (Fla. 26581)[†]
PO Box 105    Roger K. Gannam (Fla. 240450)[†]
Feeding Hills, MA 01030    Liberty Counsel
(413) 789-7771    P.O. Box 540774
ryan@mclanelaw.com    Orlando, FL 32854-0774
    (407) 875-1776
    court@lc.org
    hmihet@lc.org
    rgannam@lc.org
    *Attorneys for Plaintiffs*
    [†]Admitted to appear *pro hac vice*.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2018, I caused the foregoing to be electronically filed through the Court's ECF system. Service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

/s/ Horatio G. Mihet
*Attorney for Plaintiffs*
